1
2
3
4             UNITED STATES DISTRICT COURT
5                  DISTRICT OF NEVADA
6                        * * *
7  BANK OF AMERICA, N.A.,                    Case No. 2:15-CV-1768 JCM (CWH)
8                          Plaintiff(s),                  ORDER
9          v.
10  SFR INVESTMENTS POOL 1, LLC, et al.,
11                        Defendant(s).
12
13          Presently before the court is defendant/third-party plaintiff Thomas Jessup, LLC's
14  ("Jessup") motion to dismiss.  (ECF No. 47).  Defendant/counterclaimant SFR Investments Pool
15  1, LLC ("SFR") filed a response (ECF No. 51), to which Jessup replied (ECF No. 55).
16          Also before the court is third-party defendant Daunshari Wong-Culotta's ("Wong") motion
17  to dismiss.  (ECF No. 50).[1]  Jessup filed a response (ECF No. 56), to which Wong replied (ECF
18  No. 63).
19          Also before the court is plaintiff/counterdefendant Bank of America, N.A., successor by
20  merger to BAC Home Loans Servicing, LP's ("BANA") motion for summary judgment.  (ECF
21  No. 59).  Responses were filed by Jessup (ECF No. 65), SFR (ECF No. 66), and defendant Davyn
22  Ridge Homeowners Association (the "HOA") (ECF No. 72), to which BANA replied 73).
23
24
25
26
27
28
          [1]  Pursuant to Local Rule IC 2-2(b), a separate document must be filed on the docket for
each purpose.  The court cannot consider Wong's motion for attorney's fees and costs unless it is
filed separately, as a motion.

James C. Mahan
U.S. District Judge

Also before the court is the HOA's motion for summary judgment.  (ECF No. 60).  BANA filed a response.  (ECF No. 68).  The HOA has not replied, and the period to do so has since passed.[2]

Also before the court is SFR's motion for summary judgment.  (ECF No. 61).  BANA filed a response (ECF No. 67), to which SFR replied (ECF No. 71).

Also before the court is SFR's motion to certify a question of law to the Nevada Supreme Court (ECF No. 83), in which the HOA joined (ECF No. 86).  BANA filed a response (ECF No. 84), to which SFR replied (ECF No. 85).

**I.   Facts**

This case involves a dispute over real property located at 3917 Jamison Park Lane, North Las Vegas, Nevada 89032 (the "property").

On November 18, 2009, crossdefendant Donald Gould ("Gould") obtained a loan in the amount of $142,373.00 from Ryland Mortgage Company and purchased the property.  (ECF No. 1 at 4).  The loan was secured by a deed of trust recorded November 20, 2009.  (ECF No. 1 at 4).

The deed of trust was assigned to BAC Home Loans Servicing, LP f/k/a/ Countrywide Home Loans Servicing, LP ("BAC") via assignment deed recorded on July 21, 2011.  (ECF No. 1 at 4).  BAC subsequently merged into BANA.  (ECF No. 1 at 4).

On December 9, 2011, Nevada Association Services, Inc. ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,262.70.  (ECF No. 1 at 5).  On January 30, 2012, NAS recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $2,448.50.  (ECF No. 1 at 5).

In February 2012, BANA's counsel Miles Bauer Bergstrom & Winters, LLP ("MBBW") request a payoff ledger, but NAS refused.  (ECF No. 1 at 6).  BANA and its counsel calculated the sum of nine-months of common assessments and determined the superpriority amount to be

---

[2]   The HOA improperly filed a supplement (ECF No. 87) to its motion for summary judgment (ECF No. 60) without leave of court in violation of LR 7-2(g).  LR 7-2(g) ("Supplementation prohibited without leave of court.").  Accordingly, the court will strike the HOA's supplemental filing (ECF No. 87) pursuant to LR 7-2(g).  LR 7-2(g) ("The judge may strike supplemental filings made without leave of court.").

$585.00.  (ECF No. 1 at 6).  On March 15, 2012, BANA tendered that amount to the HOA, which the HOA refused.  (ECF No. 1 at 6).

On June 6, 2012, NAS recorded a notice of trustee's sale, stating an amount due of $3,442.17.  (ECF No. 1 at 5).  Jessup purchased the property for $5,500.00 at the foreclosure sale on September 14, 2012.  (ECF No. 1 at 6).  A trustee's deed upon sale in favor of Jessup was recorded on September 20, 2012.  (ECF No. 1 at 6).

On April 3, 2013, Jessup transferred title to SFR via a grant, bargain, sale deed recorded on April 8, 2013.  (ECF No. 1 at 7).

On September 14, 2015, BANA filed a complaint against SFR, the HOA, and Jessup, alleging four causes of action: (1) quiet title/declaratory judgment against SFR; (2) breach of NRS 116.1113 against the HOA; (3) wrongful foreclosure against the HOA; and (4) injunctive relief against SFR.  (ECF No. 1).  The court subsequently dismissed claims (2) through (4) in an order granting the HOA's motion to dismiss (ECF No. 13), but allowed claim 1 (quiet title/declaratory judgment) to proceed.  (ECF No. 58).

On December 10, 2015, SFR filed a counterclaim against BANA and a crossclaim against Gould, alleging two causes of action: (1) declaratory relief/quiet title; and (2) preliminary and permanent injunction.  (ECF No. 27).

On January 20, 2016, Jessup filed a third-party complaint against Wong, alleging two causes of action: (1) fraud; and (2) negligence and equitable indemnity.  (ECF No. 38).  Jessup alleges that Wong is in the business of buying foreclosed properties and that Wong placed Jessup's name on the property after purchasing it at the foreclosure sale without Jessup's knowledge or consent.  (ECF No. 38).  Jessup alleges that thereafter, Wong induced Jessup into signing over power of attorney to transfer the property to a different company with a false story that the property was inadvertently placed in Jessup's name.  (ECF No. 38 at 5).  Jessup further alleges that Wong then executed a grant, bargain, and sale deed of the property to SFR without Jessup's knowledge or consent.  (ECF No. 38 at 5).

James C. Mahan
U.S. District Judge

1   In the instant motions, Jessup and Wong move to dismiss (ECF Nos. 47, 50), BANA, the

2   HOA, and SFR move for summary judgment (ECF Nos. 59, 60, 61), and SFR moves to certify a

3   question of law to the Nevada Supreme Court (ECF No. 83).  The court will address each in turn.

4   **II.    Legal Standard**

5       **A.  Motion to Dismiss**

6   A court may dismiss a complaint for "failure to state a claim upon which relief can be

7   granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain

8   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell*

9   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed

10  factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

11  elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

12  "Factual allegations must be enough to rise above the speculative level."  *Twombly*, 550

13  U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

14  matter to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. 662, 678 (citation

15  omitted).

16  In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply

17  when considering motions to dismiss.  First, the court must accept as true all well-pled factual

18  allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.

19  *Id.* at 678–79.  Mere recitals of the elements of a cause of action, supported only by conclusory

20  statements, do not suffice.  *Id.* at 678.

21  Second, the court must consider whether the factual allegations in the complaint allege a

22  plausible claim for relief.  *Id.* at 679.  A claim is facially plausible when the plaintiff's complaint

23  alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the

24  alleged misconduct.  *Id.* at 678.

25  Where the complaint does not permit the court to infer more than the mere possibility of

26  misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief."  *Id.*

27  (internal quotation marks omitted).  When the allegations in a complaint have not crossed the line

28  from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

**James C. Mahan**
**U.S. District Judge**

- 4 -

1    The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202,

2    1216 (9th Cir. 2011).  The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

7    *Id.*

8    ### B. Summary Judgment

9    The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

10   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

11   show that "there is no genuine dispute as to any material fact and the movant is entitled to a

12   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

13   "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

14   323–24 (1986).

15   For purposes of summary judgment, disputed factual issues should be construed in favor

16   of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

17   entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts

18   showing that there is a genuine issue for trial."  *Id.*

19   In determining summary judgment, a court applies a burden-shifting analysis.  The moving

20   party must first satisfy its initial burden.  "When the party moving for summary judgment would

21   bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

22   directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has

23   the initial burden of establishing the absence of a genuine issue of fact on each issue material to

24   its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

25   (citations omitted).

26   By contrast, when the nonmoving party bears the burden of proving the claim or defense,

27   the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

28   element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed

James C. Mahan
U.S. District Judge

- 5 -

1  to make a showing sufficient to establish an element essential to that party's case on which that

2  party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving

3  party fails to meet its initial burden, summary judgment must be denied and the court need not

4  consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–

5  60 (1970).

6       If the moving party satisfies its initial burden, the burden then shifts to the opposing party

7  to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

8  *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

9  opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

10  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11  versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

12  631 (9th Cir. 1987).

13       In other words, the nonmoving party cannot avoid summary judgment by relying solely on

14  conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040,

15  1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

16  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

17  for trial.  *See Celotex*, 477 U.S. at 324.

18       At summary judgment, a court's function is not to weigh the evidence and determine the

19  truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby*,

20  *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all

21  justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the

22  nonmoving party is merely colorable or is not significantly probative, summary judgment may be

23  granted.  *See id.* at 249–50.

24       **C.  Certify Question of Law to the Nevada Supreme Court**

25       The Nevada Rules of Appellate Procedure provide that the Supreme Court of Nevada has

26  the power to answer "questions of [state] law . . . which may be determinative of the cause then

27  pending in the certifying court and as to which it appears to the certifying court there is no

28  controlling precedent in the decisions of the Supreme Court of [Nevada]."  Nev. R. App. P. 5(a).

**James C. Mahan**
**U.S. District Judge**

1    The Nevada Supreme Court "may answer questions of law certified [] by a federal court

2    when (1) [the] answers to the certified questions may be determinative of part of the federal case,

3    (2) there is no clearly controlling Nevada precedent, and (3) the answers to the certified questions

4    will help settle important questions of law. *See, e.g.*, *Hartford Fire Ins. Co. v. Tr. of Const. Indus.*,

5    208 P.3d 884, 888 (Nev. 2009).

6    Where the question does not impact the merits of a claim pending before the certifying

7    court, the question should not be certified to the Supreme Court. *See* Nev. R. App. P. 5(a)

8    (requiring that certified question be "determinative"); *see also Volvo Cars of N. Am., Inc. v. Ricci*,

9    137 P.2d 1161, 1164 (Nev. 2006) (declining to answer certified questions where "answers to the

10   questions posed [] would not 'be determinative' of any part of the case"). "The certification

11   procedure is reserved for state law questions that present significant issues, including those with

12   important public policy ramifications, and that have not yet been resolved by the state courts."

13   *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003).

14   Federal courts have discretion to certify questions of state law. *Lehman Bros. v. Schein*,

15   416 U.S. 386, 391 (1974). "Resort to certification is not mandatory where state law is unclear on

16   a particular issue." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008)

17   (citing *Lehman Bros.*, 416 U.S. at 390–91). Generally, "[w]hen a decision turns on applicable

18   state law and the state's highest court has not adjudicated the issue, a federal court must make a

19   reasonable determination of the result the highest state court would reach if it were deciding the

20   case." *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

21   Further, a federal court may decline to certify a question where controlling precedent is

22   available for guidance. *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1041 (9th

23   Cir. 2014); *see also Kehoe v. Aurora Loan Servs., LLC*, No. 3:10-cv-256-RCJ-RAM; 2010 WL

24   4286331, at *11 (D. Nev. Oct. 20, 2010) (declining to certify question to Nevada Supreme Court

25   where statutory language was sufficiently clear for the court to apply).

26   Finally, a party must show "particularly compelling reasons" for certification when that

27   party first requests it after losing on an issue. *Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir.

28

James C. Mahan
U.S. District Judge

1   1984) ("Ordinarily such a movant should not be allowed a second chance at victory when, as here,

2   the district court employed a reasonable interpretation of state law.").

3   **III.    Discussion**

4       **A. Motions to Dismiss**

5           *1.  Jessup's Motion to Dismiss* (ECF No. 47)

6       Jessup moves to dismiss BANA's quiet title claim for failure to state a claim, arguing that

7   BANA fails to sufficiently allege facts to put Jessup on notice to adequately defend.  (ECF No.

8   47).

9       The court disagrees.  Under Nevada law, "[a]n action may be brought by any person against

10  another who claims an estate or interest in real property, adverse to the person bringing the action

11  for the purpose of determining such adverse claim."  Nev. Rev. Stat. § 40.010.  "A plea to quiet

12  title does not require any particular elements, but each party must plead and prove his or her own

13  claim to the property in question and a plaintiff's right to relief therefore depends on superiority

14  of title."  *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations

15  and internal quotation marks omitted).  Therefore, for plaintiff to succeed on its quiet title action,

16  it needs to show that its claim to the property is superior to all others.  *See also Breliant v. Preferred*

17  *Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests

18  with the plaintiff to prove good title in himself.").

19      BANA has sufficiently alleged a quiet title claim against Jessup to withstand a 12(b)(6)

20  motion to dismiss.  In particular, BANA has alleged that Jessup purchased the property at the

21  foreclosure sale and that Jessup later transferred the property to SFR.  While Jessup claims that

22  another party actually purchased the property at the foreclosure sale (ECF No. 38), on a motion to

23  dismiss, the court considers the well pleaded facts of the complaint.

24      Accordingly, Jessup's motion to dismiss BANA's quiet title claim will be denied.

25          *2.  Wong's Motion to Dismiss* (ECF No. 50)

26      Wong argues that dismissal of Jessup's third-party complaint is proper because "there is

27  no claim against Jessup in the [c]omplaint" upon which Jessup's third-party complaint may be

28  arise.  (ECF No. 50).

**James C. Mahan**
**U.S. District Judge**

- 8 -

1    The court disagrees.  Wong's argument presupposes that BANA's complaint fails to state

2    a quiet title claim against Jessup.  As this is not the case, Wong's argument fails.  Accordingly, the

3    court will deny Wong's motion to dismiss Jessup's third-party complaint.

4    **B.  Motions for Summary Judgment** (ECF Nos. 59, 60, 61)

5    BANA argues that summary judgment in its favor is proper on its quiet title claim against

6    the HOA and SFR because it tendered the superpriority portion to the HOA, the foreclosure sale

7    was commercially unreasonable, and the Supremacy Clause preempts any application of state law.

8    (ECF No. 59).  BANA further argues that the sale is void because the HOA lien statute violates

9    due process and *SFR Investments* should not be applied retroactively.  (ECF No. 59).

10   The HOA contends that BANA's quiet title claim fails as a matter of law because, *inter*

11   *alia*, BANA has no standing to assert Supremacy Clause or due process.  (ECF No. 60).

12   SFR argues that summary judgment in its favor is proper on its quiet title claim against

13   BANA and Gould because the foreclosure sale extinguished the first deed of trust pursuant to NRS

14   116.3116(2).  (ECF No. 61).

15   *1.  Nev. Rev. Stat. § 116.31166[3]*

16   SFR asserts that its submission of a foreclosure deed issued pursuant to NRS 116.31164,

17   which recites compliance with the notice provisions of NRS 116.31162 through NRS 116.31168,

18   shifts the burden to BANA to invalidate the foreclosure and the foreclosure deed conveying title

19   to SFR with evidence of fraud, unfairness, or oppression.  (ECF No. 61).

20   Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its

21   homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives

22   priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as

23   "[a] first security interest on the unit recorded before the date on which the assessment sought to

24   be enforced became delinquent."  Nev. Rev. Stat. § 116.3116(2)(b).

25

26

27

28

---

[3]  The 2015 Legislature revised Chapter 116 substantially.  2015 Nev. Stat., ch. 266.  Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–12, when the events giving rise to this litigation occurred.

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first

security interests.  *See* Nev. Rev. Stat. § 116.3116(2).  In *SFR Investment Pool 1 v. U.S. Bank*, the

Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece.  The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust.  The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority

lien by nonjudicial foreclosure sale.  *Id*. at 415.  Thus, "NRS 116.3116(2) provides an HOA a true

superpriority lien, proper foreclosure of which will extinguish a first deed of trust."  *Id*. at 419; *see*

*also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale"

upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to

NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale,

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[4]  "The 'conclusive' recitals concern default, notice, and

publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[4]  The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

James C. Mahan
U.S. District Judge

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1110. Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, SFR has provided the recorded trustee's deed upon sale (ECF No. 61, exh. A-13), the recorded notice of delinquent assessment (ECF No. 61, exh. A-5), the recorded notice of default and election to sell (ECF No. 61, exh. A-7), and the recorded notice of trustee's sale (ECF No. 61, exh A-10). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle SFR to success on its quiet title claim. *See Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title). Thus, the question remains whether BANA demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

### 2. *Rejected Tender*

BANA argues that the foreclosure sale is void because BANA attempted to tender the superpriority amount to NAS, which NAS wrongfully rejected. (ECF No. 59 at 6–9). In particular, BANA asserts that its counsel MBBW requested a payoff demand from NAS, to which NAS failed to respond. (ECF No. 59 at 4). Based on a prior statement of account previously obtained for the

1   same HOA in connection with a different property, BANA and its counsel calculated the amount

2   necessary to pay in full the super-priority lien to be $585.00 based on nine months of assessments.

3   (ECF No. 59 at 4).  MBBW, on behalf of BANA, tendered a payment in the amount of $503.10 to

4   NAS on March 15, 2012.  (ECF No. 59 at 4).  BANA asserts that NAS wrongfully rejected this

5   tender.  (ECF No. 59 at 4).

6        The HOA contends that it had no legal duty to respond to BANA and BANA made its

7   tender conditional.  (ECF No. 60 at 22–23).

8        Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority

9   portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.

10  *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior

11  lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see*

12  *also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149

13  (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their

14  security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of*

15  *Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev.

16  1980))).

17       The superpriority lien portion, however, consists of "the last nine months of unpaid HOA

18  dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of

19  "all other HOA fees or assessments."  *SFR Investments*, 334 P.3d at 411 (emphasis added); *see*

20  *also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of

21  unpaid assessments and certain charges specifically identified in § 116.31162.").

22       BANA and its counsel merely presumed, without adequate support, that the amount set

23  forth in the notice of default included more than the superpriority lien portion.  (ECF No. 59-7 at

24  7).  Moreover, BANA fails to specify which costs set forth in the notice of default were improperly

25  included in the amount, nor does it dispute a particular cost as improperly included.

26       According to the recorded notice of default, the amount due as of January 30, 2012, was

27  $2,448.50.  (ECF No. (ECF No. 61, exh. A-7).  Rather than tendering the amount set forth in the

28  notice of default and then later seeking a refund of any difference, BANA decided to tender

James C. Mahan
U.S. District Judge

- 12 -

$585.00, the amount BANA and its counsel calculated to be nine months of assessments.  *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund).  While BANA asserts that NAS's rejection of the $585.00 tender was wrongful, it offers nothing in support of such assertion.

BANA cites to *Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 382 P.3d 911 (Nev. 2016), for the proposition that an offer to pay the superpriority amount prior to the foreclosure sale preserves the lender's deed of trust.  (ECF No. 73 at 7).

The *Stone Hollow* court, however, made no such holding.  To the contrary, the *Stone Hollow* court held that "[w]hen rejection of a tender is unjustified, the tender is effective to discharge the lien."  382 P.3d at 911.

Based on the foregoing, BANA has failed to show that it tendered the full superpriority amount to NAS prior to the foreclosure, nor has it shown NAS's alleged rejection to be wrongful.

### 3.  *Commercially Unreasonable*

BANA contends that the foreclosure sale is invalid because it was commercially unreasonable.  (ECF No. 59 at 9–12).  In particular, BANA asserts that the property sold at the foreclosure sale for less than 4% of its fair market value.  (ECF No. 59 at 2).

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression."  366 P.3d 1105, 1110 (Nev. 2016); *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853 (D. Nev. 2016).  In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression."  *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528 (Nev. 1982).

BANA asserts that the Nevada Supreme Court, in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc*., 366 P.3d 1105 (Nev. 2016), "explained [that] an inadequate sale pirce alone can be sufficient to set aside a foreclosure sale if the price is 'grossly inadequate.'" (ECF No. 59 at 10).  In support, BANA quotes a parenthetical explanation, which quotes the

1    Restatement, and attempts to pass it off as the court's holding in *Shadow Wood*. (ECF No. 59 at
2    10).

3    However, the *Shadow Wood* court makes no such holding. Furthermore, no language exists
4    in *Shadow Wood* that exhibits the Nevada Supreme Court's intention to adopt the Restatement.
5    *Compare Shadow Wood*, 366 P.3d at 1112 (citing the Restatement as secondary authority to
6    warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village,*
7    *Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement
8    in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012)
9    ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm
10   section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013)
11   (affirmatively adopting the Restatement (Second) of Torts section 592A).

12   Because Nevada courts have not adopted the relevant section(s) of the Restatement at issue
13   here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a
14   grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

15   In the alternative, BANA contends that NAS's wrongful rejection of BANA's tender
16   satisfies the unfairness prong to support a set aside. (ECF No. 59 at 12). As previously discussed
17   in the rejected tender section, BANA has not shown that NAS's rejection was wrongful.

18   Accordingly, BANA has not shown its entitled to summary judgment based on this issue,
19   nor has BANA raised a genuine dispute sufficient to withstand SFR's motion for summary
20   judgment.

21                           ***4.  Supremacy Clause***

22   BANA argues that the loan was insured by the FHA and SFR has not made the requisite
23   showing that the FHFA consented to the foreclosure sale so as to eliminate that security interest
24   as a matter of law. (ECF No. 59 at 13–18).

25   In response, SFR contends that BANA set forth no evidence that FHFA, Fannie Mae, or
26   Freddie Mac have ever had an ownership interest in the loan. (ECF No. 66 at 8–9). SFR further
27   argues that BANA nonetheless lacks standing to assert a federal interest on behalf of a federal
28   agency. (ECF No. 66 at 8–9).

**James C. Mahan**
**U.S. District Judge**

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with the purposes of the FHA insurance program. Specifically, it hinders HUD's ability to recoup funds from insured properties. As this court previously stated in *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS 116.3116 may not extinguish a federally-insured loan. No. 2:13–CV–1199 JCM (VCF), 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015).

However, the instant case is distinguishable from these cases in that, here, FHA is not a named party. Neither the complaint nor the counterclaim seeks to quiet title against FHA. Further, SFR's quiet title claim does not seek declaratory relief against FHA, but only as to BANA and Gould. Thus, this argument provides no support for BANA as the outcome of the instant case has no bearing on FHA's ability to quiet title.

Accordingly, BANA has not shown its entitled to summary judgment based on this issue, nor has BANA raised a genuine dispute sufficient to withstand SFR's motion for summary judgment.

### 5. *Bona Fide Purchaser*

The parties dispute SFR's status as a bona fide purchaser. BANA argues that SFR is not a bona fide purchaser because SFR cannot show that it took without notice of a competing or superior interest in the same property. (ECF No. 59 at 19–22.) By contrast, SFR contends that it is a bona fide purchaser because at the time SFR purchased the property it had no notice of a

competing or superior interest that would have survived the foreclosure sale.  (ECF No. 61 at 18–19).

The issue of bona fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals.  Specifically, the issue of BFP status concerns a buyer's knowledge of competing interests, whereas the other concerns a statutory presumption that can be equitably overcome under *Shadow Wood Homeowners Assoc., Inc.  See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. 3d at 859–60.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive.").  Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1).  In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his/her interest first.  *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

The court finds that genuine issues of fact exist regarding SFR's status as a bona fide purchaser so as to preclude summary judgment.  A reasonable jury could conclude that SFR was not a bona fide purchaser because a reasonable purchaser would have perceived some risk that the foreclosure would not extinguish the first deed of trust as the law was not clear at the time of the sale that the foreclosure would extinguish the deed of trust.  *See id*.

Further, Jessup raises genuine issues as to the validity of the deed.  (ECF No. 65).  In particular, Jessup disputes that it was the purchaser at the foreclosure sale and asserts that Wong

1    fraudulently transferred title to SFR.  (ECF No. 65).  Thus, genuine issues exist regarding the

2    validity of the deed as well.

3                              *6.  Retroactivity*

4          BANA argues that SFR Investments should not be applied retroactively to extinguish its

5    first deed of trust.  (ECF No. 59 at 22–23).

6          The retroactivity issue has been certified to the Nevada Supreme Court in other district of

7    Nevada cases.  *See, e.g.*, *Christiana Trust v. K&P Homes*, No. 2:15-cv-1534, 2016 WL 923091, at

8    *2 (D. Nev. Mar. 9, 2013).  Therefore, the court will not issue a ruling on the issue of retroactivity

9    at this time.  If this case should conclude in SFR's favor, the court will then determine whether to

10   stay judgment during the pendency of the Nevada Supreme Court's resolution of the issue.

11         Accordingly, the court will deny summary judgment as to this issue.

12                             *7.  Due Process*

13         BANA contends that the HOA lien statute is unconstitutional.  (ECF No. 59 at 23–27).  In

14   particular, BANA asserts that the "version of the HOA Lien statute applicable here is susceptible

15   to a facial attack because SFR asserts the sale extinguished the senior deed of trust even though

16   the version of the statute did not require notice."  (ECF No. 59 at 27).  BANA maintains that "[t]his

17   alone is sufficient to invalidate the statute and the foreclosure at issue in this case."  (ECF No. 59

18   at 27).

19         In response, SFR argues that BANA lacks standing to assert a due process argument

20   because BANA received actual notice.  (ECF No. 66 at 2).  In support, SFR asserts that BANA

21   admitted to receiving actual notice of both the notice of default and the notice of foreclosure sale.

22   (ECF No. 66 at 23).

23         In reply, BANA does not dispute that it received actual notice.  (ECF No. 73 at 3–7).

24   Rather, BANA contends that whether it had actual notice is irrelevant.  (ECF No. 73 at 3–7).  As

25   support, BANA relies on *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154

26   (9th Cir. 2016).  (ECF No. 73 at 3–7).  In particular, BANA asserts that the statute is void as a

27   matter of law because *Bourne Valley* held the entire statute to be facially unconstitutional.  (ECF

28   No. 73 at 3–7).

**James C. Mahan**
**U.S. District Judge**

1    BANA misstates the *Bourne Valley* holding.  The Ninth Circuit held that NRS 116.3116's

2    "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to

3    foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders'

4    constitutional due process rights.  *Bourne Valley Court Trust*, 832 F.3d at 1157–58.  The facially

5    unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2).  *See id.* at

6    1158.  At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders

7    of the property interest at risk.  *See id.*

8    To state a procedural due process claim, BANA must allege "(1) a deprivation of a

9    constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

10   protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.

11   1998).  BANA has satisfied the first element as a deed of trust is a property interest under Nevada

12   law.  *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S.

13   791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is

14   significantly affected by a tax sale").  However, BANA fails on the second prong.

15   Due process does not require actual notice.  *Jones v. Flowers*, 547 U.S. 220, 226 (2006).

16   Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested

17   parties of the pendency of the action and afford them an opportunity to present their objections."

18   *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*

19   *Court Trust*, 832 F.3d at 1158.

20   Here, adequate notice was given to the interested parties prior to extinguishing a property

21   right.  BAC, and BANA by merger, recorded its assignment deed on July 21, 2011.  NAS recorded

22   a notice of default and election to sell on January 30, 2012, and sent (by certified mailed) copies

23   of the notice to interested parties, including BAC.

24   As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect

25   inherent in NRS 116.31163(2) as it put BANA on notice that its interest was subject to pendency

26   of action and offered all of the required information.   Thus, BANA's motion for summary

27   judgment will be denied as to this issue.

28

James C. Mahan
U.S. District Judge

1    In light of the foregoing, the court finds genuine issues exist as to SFR's status as a bona

2    fide purchaser and the validity of the deed so as to preclude summary judgment.

3    **C.  Motion to Certify**

4    SFR and the HOA requests that the court certify the following question to the Nevada

5    Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 requires

6    homeowners' associations to provide notices of default to banks even when a bank does not request

7    notice?" (ECF Nos. 83, 86).

8    The court declines to certify this question as controlling precedent is available for guidance.

9    The Ninth Circuit, in *Bourne Valley Court Trust*—which SFR cites to in its motion—expressly

10   answered this exact question in the negative.  More specifically, the Ninth Circuit held, in relevant

11   part, as follows:

12   > Bourne Valley argues that Nevada Revised Statute section 116.31168(1), which
   > incorporated section 107.090, mandated actual notice to mortgage lenders whose

13   > rights are subordinate to a homeowners' association super priority lien. . . .
   > According to Bourne Valley, this incorporation of section 107.090 means that

14   > foreclosing homeowners' associations were required to provide notice to mortgage
   > lenders even absent a request.

15   > . . . .
   > If section 116.31168(1)'s incorporation of section 107.090 were to have required

16   > homeowners' associations to provide notice of default to mortgage lenders even
   > absent a request, section 116.31163 and section 116.31165 would have been

17   > meaningless.  We reject Bourne Valley's argument.

18   *Bourne Valley Court Trust*, 832 F.3d at 1159.

19   Accordingly, the court will deny SFR's motion to certify this question to the Nevada

20   Supreme Court.

21   **IV.    Conclusion**

22   Accordingly,

23   IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Jessup's motion to dismiss

24   (ECF No. 47) be, and the same hereby is, DENIED.

25   IT IS FURTHER ORDERED that Wong's motion to dismiss (ECF No. 50) be, and the

26   same hereby is, DENIED.

27   IT IS FURTHER ORDERED that BANA's motion for summary judgment (ECF No. 59)

28   be and the same hereby is, DENIED.

**James C. Mahan**
**U.S. District Judge**

1    IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 60)

2    be, and the same hereby is, DENIED.

3    IT IS FURTHER ORDERED that the HOA's supplement to its motion for summary

4    judgment (ECF No. 87) be, and the same hereby is, STRICKEN.

5    IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 61) be,

6    and the same hereby is, DENIED.

7    IT IS FURTHER ORDERED that SFR's motion to certify a question of law to the Nevada

8    Supreme Court (ECF No. 83) be, and the same hereby is, DENIED.

9    DATED February 14, 2017.

10   _____

11   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**